USDC SDNY
DOCUMENT ELECTRONICALLY FILED
DOC#: _____
DATE FILED: _12-27-16_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HYPNOTIC HATS, LTD.,

          **Plaintiff,**

-against-

WINTERMANTEL ENTERPRISES, LLC, HYPE CHEER, LLC, and HYPE SOCKS, LLC,

          **Defendants.**

15-cv-06478 (ALC)

**OPINION AND ORDER**

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff Hypnotic Hats, Ltd. commenced this action against Defendants Wintermantel Enterprises, LLC ("WE"), Hype Cheer, LLC ("Hype Cheer"), and Hype Socks, LLC ("Hype Socks"), alleging trademark infringement and false designation under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, and related common-law claims. Defendants moved to dismiss the complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). For the reasons below, Defendants' motion is DENIED.

## BACKGROUND

### I.    Factual Background

Plaintiff is a Delaware corporation with its principal place of business in New York. ECF No. 23 (Amended Complaint ("Am. Compl.")), at ¶ 1. It sells apparel under the registered trademark "HYP." Am. Compl. ¶¶ 12-14, 18.

Defendant WE is a Georgia limited liability company with its principal place of business in Georgia. ECF No. 42 (Declaration of Josh Wintermantel, dated May 24, 2016 ("Wintermantel Decl.")), at ¶ 3. Wintermantel and two other individuals formed WE in August 2014, and it currently is owned by Josh Wintermantel. Wintermantel Decl. ¶ 2; ECF No. 45 (Declaration of

1

Ryan M. Gainor, dated Oct. 4, 2016 ("Gainor Decl.")), Ex. D. Wintermantel also is a co-owner of defendant Hype Socks, an Ohio limited liability company with its principal place of business in Ohio and, through WE, co-owns Hype Cheer, a Georgia limited liability company with its principal place of business in Georgia. Wintermantel Decl. ¶¶ 9-11, 18-19. Prior to incorporating Hype Socks in June 2015, Wintermantel operated the Hype Socks brand through WE and has continued to associate WE with the Hype Socks brand. Gainor Decl., Exs. E-H.

Hype Cheer sells athletic bras bearing the mark, "Hype Cheer." Wintermantel Decl. ¶ 12. Hype Socks sells athletic socks bearing the mark, "Hype." *Id.* ¶ 20. Both Hype Cheer and Hype Socks maintain websites through which consumers may order their products. *Id.* ¶¶ 13, 23. The websites are viewable by the general public and are not specifically directed to residents of New York, nor does either company place any particular emphasis on marketing to residents of New York more so than to residents in other states. *Id.* ¶¶ 13, 17, 23-24. In addition to its website, Hype Socks also sends direct email solicitations to school and intramural athletic programs. *Id.* ¶ 28. Hype Socks has sent more than 5,000 email solicitations to individuals in New York. Gainor Decl., Ex. A.

Customers in New York have placed a total of either five or ten orders with Hype Cheer. *Compare* Wintermantel Decl. ¶ 16, *with* Gainor Decl., Ex. L. Between July 2014 and February 2016, customers in New York placed 109 of Hype Socks' 2,533 total orders. Wintermantel Decl. ¶ 26. Of those 109 orders, 33 were made after Hype Socks' incorporation on June 7, 2015. Gainor Decl., Exs. B.

## II.     Procedural Background

Plaintiff initiated this action on August 17, 2015, alleging that Defendants had infringed on its trademark. ECF No. 1. Plaintiff filed an amended complaint on January 21, 2016. ECF No. 23. On June 2, 2016, Defendants moved to dismiss the Complaint for lack of personal

2

jurisdiction. ECF No. 40 (Defendants' Motion); ECF No. 41 (Defendants' Memorandum of Law ("Defs.' Mem.")); Wintermantel Decl. After holding a status conference on July 21, 2016 regarding the need for jurisdictional discovery, the Court granted Plaintiff's request to engage in limited jurisdictional discovery. ECF No. 43. Jurisdictional discovery closed on August 18, 2016, and Plaintiff filed its opposition to Defendants' motion to dismiss on October 4, 2016. ECF No. 44 (Plaintiff's Memorandum of Law ("Pl.'s Mem.")); Gainor Decl. Defendants did not submit any reply in further support of their motion.

## LEGAL STANDARD

"In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a *prima facie* showing that jurisdiction exists." *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 167-68 (2d Cir. 2015) (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013)) (internal quotation marks omitted). Where, as here, there has been jurisdictional discovery but no evidentiary hearing, "the plaintiff's *prima facie* showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013) (citation omitted). "The Court must 'construe the pleadings and affidavits in the light most favorable to plaintiffs, resolving all doubts in their favor.'" *Weiss v. Nat'l Westminster Bank PLC*, 176 F. Supp. 3d 264, 276 (E.D.N.Y. Mar. 31, 2016) (quoting *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008)). However, the Court may not "'draw argumentative inferences in the plaintiff's favor,'" *id.* (quoting *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994)), "or 'accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Jazini v. Nissan*

*Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998)); *see also In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013).

## DISCUSSION

When evaluating whether the Court has "personal jurisdiction over a non-domiciliary in a case involving a federal question," the Court engages in a two-step analysis. *Eades*, 799 F.3d at 168 (quoting *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010)). First, the Court must "apply the forum state's long-arm statute." *Id.* (citation omitted). In New York, that statute is N.Y. C.P.L.R. § 302(a). Second, "[i]f the long-arm statute permits personal jurisdiction," the Court must "analyze whether personal jurisdiction comports with due process protections established under the Constitution." *Id.*

### I.   New York's Long-Arm Statute

Plaintiff asserts that this Court has jurisdiction over Defendants under both CPLR § 302(a)(1) and § 302(a)(3); however, because the Court finds that there is a basis for personal jurisdiction over Defendants pursuant to CPLR § 302(a)(1), the Court need not examine the other basis for specific jurisdiction alleged. "To establish personal jurisdiction under section 302(a)(1), two requirements must be met:  (1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006).

"[P]roof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Eades*, 799 F.3d at 168 (citation omitted). "Purposeful activities are those with which a defendant, through volitional acts, avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* (quoting *Fischbarg v. Doucet*, 9

4

N.Y.3d 375, 380 (N.Y. 2007)). Thus, a "single act of shipping a [product] might well be sufficient, by itself, to subject [a nondomiciliary] to the jurisdiction of a New York court under section 302(a)(1)." *Chloé*, 616 F.3d at 170.

In addition to shipping activities, "[a] website that does more than provide information about a product and allows customers to purchase goods online, is a 'highly interactive website,' which may provide a basis for personal jurisdiction under CPLR § 302(a)." *Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co., LLC*, No. 15-cv-8459 (LGS), 2016 WL 3748480, at *3 (S.D.N.Y. July 8, 2016) (quoting *Chloé*, 616 F.3d at 170) (finding personal jurisdiction where defendant sold products from its website to New York consumers); *see also Grand v. Schwarz*, No. 15-cv-8779 (KMW), 2016 WL 2733133, at *3 (S.D.N.Y. May 10, 2016) (collecting cases where courts found jurisdiction based on defendants' operation of websites through which New York consumers could purchase products).

Here, as in *Chloé*, Hype Cheer and Hype Socks maintain highly interactive websites through which New York consumers may place apparel orders or design custom socks, and Defendants have shipped numerous orders to consumers in New York. *See* Wintermantel Decl. ¶¶ 13, 16, 23, 26.[1] Moreover, Hype Socks, and WE before it, have sent email solicitations to more than 5,000 school and intramural sports teams in New York. *See* Gainor Decl., Ex. A.[2] Each of these activities standing alone may have provided a sufficient basis for jurisdiction. *See Chloé*, 616 F.3d at 170 ("single act of shipping" product "might well be sufficient, by itself, to

---

[1] In their brief, Defendants assert, without any support, that their websites are passive because each of the websites describes how to place an order, but does not allow the consumer to actually place an order. Defs.' Mem. at 8. Defendants' contention is contradicted by their own factual submissions and the facts introduced by Plaintiff. *See* Wintermantel Decl. ¶¶ 13, 23 (declaring that Hype Socks and Hype Cheer "ship[] purchased products nationwide through website orders"); Gainor Decl., Ex. M (screenshots of Hype Cheer website).

[2] Plaintiff has demonstrated WE's involvement in Hype Socks marketing and sales from the August 2014 dissolution of WE's predecessor through Hype Socks' incorporation in June 2015. *See* Pl.'s Mem. at fn.1, 3. To the extent the Court refers to Defendants globally in this Opinion and Order, WE is included within this specific time frame.

subject" defendant to personal jurisdiction); *Brown v. Web.com Grp., Inc.*, 57 F. Supp. 3d 345, 358 (S.D.N.Y. 2014) (finding specific jurisdiction where defendant "solicit[ed] business from New York customers via directed emails," among other conduct); *New Angle Pet Prods., Inc. v. MacWillie's Golf Prods., Inc.*, No. 06-cv-1171 (DRH) (WDW), 2007 WL 1871345, at *3 (E.D.N.Y. June 28, 2007) (personal jurisdiction exists where defendant's website enabled viewers to purchase defendant's product online by providing payment and shipping information). "Viewed in their totality," it is beyond dispute that "these contacts sufficiently demonstrate [Defendants'] purposeful availment of the benefits of transacting business in New York." *See Chloé*, 616 F.3d at 170-71.

It does not matter that Defendants' New York sales make up a small percentage of their total sales. Defs.' Mem. at 6, 8. A single act of shipping a product into the state is sufficient to support jurisdiction. *See EnviroCare Techs., LLC v. Simanovsky*, No. 11-cv-3458 (JS) (ETB), 2012 WL 2001443, at *2 (E.D.N.Y. June 4, 2012) ("[C]ourts in this circuit have concluded that the single act of selling counterfeit goods in New York is sufficient to invoke jurisdiction.") (collecting cases). Moreover, even if the websites were not directed specifically toward New York, Defendants used these websites "to expand their market literally to the world and availed themselves of the benefits of this greatly expanded marketplace." *EnviroCare*, 2012 WL 2001443, at *4 (quoting *Dedvukaj v. Maloney*, 447 F. Supp. 2d 813, 820 (E.D. Mich. 2006)) (internal quotation marks and alterations omitted). Sellers like Defendants may not "exploit and profit from" this expanded market "without accepting the concomitant legal responsibilities that such an expanded market may bring with it." *Id.* (citation omitted). Regardless of the number of sales or the lack of online marketing specifically directed at New York, the first requirement for

jurisdiction under CPLR § 302(a)(1)—that the Defendants transacted business within the state—has been met.

The second requirement also has been met, as the claims asserted arise from Defendants' business activity in New York. Plaintiff's trademark infringement claims arise out of allegations that Defendants offered and sold the infringing products in New York through their websites. *See Lifeguard*, 2016 WL 3748480, at *3. Thus, CPLR § 302(a)(1) permits jurisdiction.

## II. Constitutional Analysis[3]

Because New York's long-arm statute permits personal jurisdiction, the Court must now analyze whether personal jurisdiction comports with the Due Process Clause of the Constitution. *Eades*, 799 F.3d at 168. "To do so, [the Court] undertake[s] an analysis consisting of two components: the 'minimum contacts' test and the 'reasonableness' inquiry." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir. 2002) (citation omitted).

As to the first component, "minimum contacts exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." *Bank Brussels*, 305 F.3d at 127 (citation and internal quotation marks omitted). Here, as discussed above, Defendants marketed and sold their products nationwide through their websites; on multiple occasions received orders from New York and shipped products to New York; and, in the case of Hype Socks and WE before it, directly solicited New York customers via email. This satisfies the minimum contacts inquiry. *See, e.g., Chloé*, 616 F.3d at 171

---

[3] Some courts in this Circuit have found that CPLR § 302(a) "complies with the Due Process Clause because it limits jurisdiction to those causes of action that arise out of activity conducted within the state," and thus, where the long-arm statute is satisfied, "the constitutional requirements of personal jurisdiction are satisfied because application of § 302(a) meets due process requirements." *Grand*, 2016 WL 2733133, at *4 (citations omitted); *see also D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 105 (2d Cir. 2006) ("[T]he constitutional requirements of personal jurisdiction are satisfied because application of N.Y. C.P.L.R. § 302(a) meets due process requirements."). Out of an abundance of caution, the Court will separately analyze the constitutionality of maintaining jurisdiction over Defendants.

("Namely, by offering bags for sale to New York consumers on the . . . website and by selling bags—including at least one counterfeit . . . bag—to New York consumers, [Defendant] has purposefully availed himself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.") (alterations, citation, and internal quotation marks omitted).

As to the second component, the exercise of jurisdiction is reasonable where it "does not 'offend traditional notions of fair play and substantial justice' . . . ." *Chloé*, 616 F.3d at 173 (quoting *Asahi Metal Indus. Co. v. Superior Court of California, Solano Cty.*, 480 U.S. 102, 113 (1987)). The Court considers five factors in determining whether the exercise of jurisdiction is reasonable:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

*Id.* at 164 (citing *Asahi*, 480 U.S. at 113-14).

Starting with the first factor, Defendants will, in fact, be burdened by Plaintiff's choice of forum, as Defendants are located out of state. However, Defendants' "generalized complaints of inconvenience arising from having to defend [themselves] from suit in New York do not add up to a compelling case that . . . would render jurisdiction unreasonable." *Chloé*, 616 F.3d at 173 (citation and internal quotation marks omitted). Furthermore, the inconvenience "cuts both ways," because if this suit were litigated in a forum more convenient to Defendants, all of Plaintiff's witnesses would have to travel. *See id.* Finally, "[e]ven if forcing the defendant to litigate in a forum relatively distant from its home base were found to be a burden, the argument would provide defendant only weak support, if any, because the conveniences of modern

communication and transportation ease what would have been a serious burden only a few decades ago." *Bank Brussels*, 305 F.3d at 129-30 (citation and internal quotation marks omitted). To the extent that Defendants will be burdened, then, this burden is light.

The second and third factors favor Plaintiff, as "New York has a manifest interest in providing effective means of redress for its residents" and Plaintiff has an interest in adjudicating this case in its state of residence. *Eades*, 799 F.3d at 169 (citation and internal quotation marks omitted). The fourth and fifth factors appear to be neutral. *See Chloé*, 616 F.3d at 173 (fourth and fifth factors neutral where New York plaintiffs asserted trademark infringement and unfair competition claims against out-of-state defendants who operated website through which New York consumers could place orders and shipped orders to New York customers).

The balance of the factors weighs in favor of Plaintiff, and thus, the exercise of personal jurisdiction over Defendants does not offend the traditional notions of fair play and substantial justice protected by the Due Process Clause. In sum, this Court may exercise personal jurisdiction over Defendants under New York's long-arm statute and such an exercise of jurisdiction is consistent with the Constitution.

## CONCLUSION

For the foregoing reasons, Plaintiff has met its burden and the Court may exercise personal jurisdiction over Defendants. Defendants' motion to dismiss is DENIED. This terminates ECF No. 40. The Court will hold a status conference in this matter on January 19, 2017, at 10:30 a.m. The parties (and/or counsel) should appear in person in Courtroom 1306 at the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, NY, on the date and time specified above.

**SO ORDERED.**

**Dated:** December 27, 2016
New York, New York

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**