USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 3/26/20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

| | | |
|---|---|---|
| HYPNOTIC HATS, LTD., | : | |
| | : | |
| Plaintiff, | : | |
| -against- | : | 1:15-CV-06478 (ALC) |
| | : | **OPINION AND ORDER** |
| WINTERMANTEL ENTERPRISES, LLC, HYPE SOCKS, LLC, AND HYPE CHEER, LLC., | : : | |
| Defendants. | : : | |

-------------------------------------------------------------x

**ANDREW L. CARTER, JR., United States District Judge:**

Defendants Wintermantel Enterprises, LLC, Hype Cheer, LLC, and Hype Socks, LLC (collectively, "Defendants") move this court to decide their Motion for Attorney's Fees pursuant to 15 U.S.C. § 1117(a), Federal Rule of Civil Procedure 54(d)(2), and Local Civil Rule 7.1 as well as their Motion to Appeal the Clerk of Court's Taxation of costs pursuant to 28 U.S.C. § 1920, Federal Rule of Civil Procedure 54(d)(1), and Southern District of New York Civil Rule 54.1. (ECF Nos. 103-2 & 113).

For the reasons explained below, Defendants' Motion for Attorney's Fees is DENIED and Defendants' Motion to Appeal the Clerk of Court's Taxation of Costs is DENIED in part and GRANTED in part.

1

## BACKGROUND

On August 17, 2015, Plaintiff, Hypnotic Hats, Ltd. ("Hyp") commenced this action against Defendants, Wintermantel Enterprises, LLC, ("Wintermantel"), Hype Socks, LLC ("Hype Socks"), and Hype Cheer, LLC ("Hype Cheer) alleging federal trademark infringement, federal unfair competition and false designation of origin, and common law unfair competition. (ECF No. )1. Hyp is a corporation that sells socks and athletic bras in connection with its HYP trademark. Defendants are companies that have sold socks and athletic bras bearing the HYPE SOCKS and HYPE CHEER marks. Hyp alleged that the HYPE marks infringed on its HYP trademark. Defendants argued that the marks were not confusingly similar and that regardless, Hyp's trademark was invalid.

On February 23, 2018, Defendants moved for summary judgment on all counts and Hyp moved for partial summary judgment on its federal trademark claim. (ECF No. 72; ECF No. 73). On September 28, 2018, the Court granted Defendants' motion for summary judgment on all counts. (ECF No. 98). With respect to Hyp's Lanham Act claims, the Court explained that courts "apply a two-prong test, looking 'first to whether the plaintiff's mark is entitled to protection, and second to whether the defendant's use of the mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods.'" (ECF No. 98 at 6) quoting *Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d, 102 (2d Cir. 2010) (citation and internal quotation marks omitted); *see Merck & Co., Inc. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402, 410–411 & n.7 (S.D.N.Y. 2006) ("trademark infringement is a narrower form of unfair competition, and the same legal test applies with respect to both"). The Court concluded that Plaintiff has a valid trademark entitled to protection and then turned to the likelihood of confusion prong of the test, analyzing Defendants' HYPE SOCKS mark on its athletic socks and HYPE CHEER mark on its

athletic bras separately. First, the Court applied the *Polaroid* factors to consider whether Defendants' use of the HYPE SOCKS mark was likely to confuse consumers. The *Polaroid* factors include:

> (1) the strength of the senior mark; (2) the degree of similarity between the two marks; (3) the proximity of the products; (4) the likelihood that the prior owner will 'bridge the gap'; (5) actual confusion; (6) the defendant's good faith (or bad faith) in adopting its own mark; (7) the quality of defendant's product; and (8) the sophistication of the buyers.

(ECF No. 98 at 9) (quoting *Savin Corp. v. Savin Group*, 391 F.3d 439, 456 (2d Cir. 2004)) (citing *Polaroid Corp. v. Polarad Elec. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961)). The Court determined that only first factor—strength of the HYP mark—cut in Hyp's favor. (ECF No. 98. at 10–29).

With respect to sports bras, the Court decided that the likelihood of confusion analysis was unnecessary because there could be no infringement since Hyp does not actually use the HYP mark in connection with its bras. (ECF No. 98 at 29–30).

On December 21, 2018, the Clerk of Court entered the judgment, closing the case. (ECF No. 102). Pursuant to Federal Rule of Civil Procedure 54(d)(2)(B)(i), Defendants had 14 days, until January 4, 2019, to file a motion for attorney's fees. On January 15, 2019, Defendants moved for leave to file a late motion for attorney's fees and contemporaneously submitted their substantive motion for the fess. (ECF. No. 103; ECF No. 103-2). Defendants argued that counsel's failure to meet the deadline was the result of excusable neglect. (ECF No. 103). Over Hyp's opposition, the Court granted Defendants' motion for leave on September 17, 2019. (ECF No. 120). Defendants requested $77,046.45 in attorney's fees. (ECF No. 103-2 at 9).

As the prevailing party, Defendants also petitioned the court for taxation of costs against Hyp pursuant to Federal Rule of Civil Procedure 54(d)(1), Local Civil Rule 54.1(c), and 28 U.S.C. § 1920 and § 1923. (ECF No. 107). Defendants requested $14,639.03 in total costs. (ECF

No. 107-1). Hyp objected to Defendants' request. (ECF No. 109). The Clerk largely agreed with Hyp's objections and awarded Defendants' only $2,805.00 in costs. (ECF No. 111).

**DISCUSSION**

**I. Attorney's Fees**

   **A. Standard of Review**

Section 35(a) of the Lanham Act provides that "court[s] in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). In *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, the Supreme Court construed the meaning of the term "exceptional case" as used in the Patent Act, 35 U.S.C. § 285, the fees provision of which is worded identically to the Lanham Act's. 572 U.S. 545, 554 (2014). The Court explained that "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.* Along with the Third, Fourth, Fifth, Sixth, Ninth, and Federal Circuits, the Second Circuit has applied *Octane Fitness* to the Lanham Act's attorney's fee provision. *See Sleepy's LLC v. Select Comfort Wholesale Corp.*, 909 F.3d 519, 530–31 (2d Cir. 2018). To assess whether a particular case qualifies as "exceptional," district courts should evaluate the totality of the circumstances, considering a wide variety of factors, including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Octane Fitness*, 572 U.S. at 554 n.6 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994).

     Generally, a prevailing party in a multi-claim case with both Lanham Act and non-Lanham Act claims can only recover attorney's fees for work related to Lanham Act counts. *See*

*Sleepy's LLC*, 909 F.3d at 531–32; *Gracie v. Gracie*, 217 F.3d 1060, 1069 (9th Cir. 2000). However, the Fifth and Ninth Circuits have crafted a narrow exception to this rule—a prevailing party can recover legal fees incurred in litigating non-Lanham Act claims if "the Lanham Act claims and non-Lanham Act claims are so intertwined that it is impossible to differentiate between work done on claims." *Gracie*, 217 F.3d at 1069–70 (internal citations omitted). The Second Circuit has not adopted this exception and has expressed some concern regarding "this possibly fraught approach." *See Sleepy's*, 909 F.3d at 532. The Court need not take a position on this issue, however, as it concludes that this is not an exceptional case in which the prevailing party is entitled to attorney's fees.

### B. Analysis

First, Hyp's Lanham Act claims were not frivolous. "An action is 'frivolous' when either: (1) the factual contentions are clearly baseless, such as when allegations are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (internal quotation marks and citations omitted). Hyp's allegations concerned its valid, incontestable trademark that the Court held to be strong. (ECF No. 98 at 12). The incontestable trademark status of Hyp's mark affords it "a strong presumption of validity in a statutory scheme designed to encourage the enforcement of trademark rights." *The Universal Church, Inc. v. Universal Live Church et. al.*, No. 14 civ. 5213, 2019 WL 4601741, at *4 (S.D.N.Y. Sept. 19, 2019) (internal quotations marks omitted). Hyp pursued the enforcement of its trademark under legal theories with clear bases in the law and so the Court sees no reason for deeming these infringement claims frivolous.

Second, Hyp's claims were objectively reasonable. Defendants argue objective unreasonableness emphasizing that they sent Hyp pre-suit letters explaining that the markets Hyp

5

and Hype used "were so drastically different that there [was] no likelihood of confusion (i.e., no trademark infringement) … In other words, Plaintiff knew from the beginning of a major flaw in its case yet plaintiff persisted anyway. That alone makes Plaintiff's prosecution of its claims objectively unreasonable." (ECF No. 122 at 2). Under Defendants' logic, any time a party makes an argument to an opposing party that proves successful at summary judgment, the Court should conclude that the losing party was "objectively unreasonable" in pursuing its claims. Such an approach "would frustrate" the enforcement of trademark rights "as registrants would hesitate to assert rights the law presumes they have for fear that failure would expose them to a punitive attorneys' fees award." *Universal Church*, 2019 WL 4601741 at *4; *See Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*, No. 14-cv-3419, 2018 WL 317850, at *2 (S.D.N.Y. Jan. 8, 2018).

The Court similarly is unpersuaded by Defendants' argument that Plaintiff's claims with regard to the HYPE SOCKS mark were objectively unreasonable because the Court concluded that only the first of the *Polaroid* factors supported them. That Hyp's claims "required the application of a fact-intensive, multifactor analysis" (the *Polaroid* test) actually demonstrates that the claims were not "so objectively unreasonable (as either a legal or factual matter) that no party 'could see an opening … through which the argument[s] could be squeezed.'" *Louis Vuitton Malletier, S.A*, 2018 WL 317850, at *2 (quoting *Small v. Implant Direct Mfg. LLC*, No. 06-CV-683, 2014 WL 5463621, at *3 (S.D.N.Y. Oct. 23, 2014)). Further, as the Court's analysis reflects, Hyp did have colorable arguments with respect to other *Polaroid* factors. For example, the Court explained that the "visual and aural similarity" of Hyp's and Hype's marks "count[ed] somewhat in favor of Plaintiff," noting that "[t]he trademarked text alone is similar" and that according to deposition testimony, although "Hyp" is actually pronounced "h-i-p," short for "Hypnotic," "customers who lack that background pronounce the mark as "h-y-p-e." (ECF No.

6

98 at 13–14). Further, although the Court concluded that the evidence showed that the parties generally "target[ed] different aspects of the athletic sock market" with Hyp selling primarily off-the-shelf from retail stores and Hype selling custom-designed socks to coaches for their teams, it noted that the evidence also showed that Hyp had provided some products to college sports teams and youth sports groups and that Hype had made sakes beyond teams. (*Id.* at 17–18). Then, with respect to "actual confusion," the Court did credit evidence Hyp submitted indicating two instances of temporary confusion between the Hyp and Hype trademarks. (*Id.* at 21–22). Although the Court ultimately decided that this evidence was de minimis and insufficient to raise triable issues of fact, this evidentiary showing by Hyp counsels against a finding of objective unreasonableness.

Defendants' strongest argument is that Hyp's claims regarding the HYPE CHEER bras was "objectively baseless" because Hyp did not use its registered HYP trademark in connection with bras. (ECF No. 103-2). Ultimately, however, this argument is unpersuasive. The Court agreed that "[w]ithout 'use' of the HYP mark on its bras, there can be no trademark infringement claim" and thus, that this was a weak claim. (ECF No. 98 at 28–29). However, Hyp did offer some evidence in support of this theory, including that the HYP trademark appeared on magazines in which HYP bras were being sold as well as testimony that the mark may appear on some of the bras' packaging. (ECF No. 98 at 30). Again, this evidence suggests that a finding of objective unreasonableness would be inappropriate in this case.

Third, Defendants have not established Hyp had improper motivations for bringing this case. Defendants have offered no evidence to suggest that Hyp sued "in bad faith, or, more generally, that [Hyp] brought its claims for any reason other than enforcing the rights the law presumed its registered marks possessed." *Universal Church*, 2019 WL 4601741, at * 4.

7

Lastly, Defendants failed to show that Hyp needed to be deterred. There is again, no evidence that this case was pursued in bad faith, nor is there "a 'broader pattern of [plaintiff's] conduct that this Court should discourage." *Id.* (quoting *Benihana of Tokyo, LLC v. Benihana, Inc.*, No. 14-cv-224, 2018 WL 3574864, at *10 (S.D.N.Y. July 25, 2011)) (alteration in original).

In summary, considering the totality of the circumstances, including Hyp's nonfrivolous, reasonable arguments and lack of improper motivation or bad faith, the Court does not think that this is an exceptional case in which Defendants are entitled to attorney's fees.

## II. Costs

Defendants also moved the Court for costs and fees including the *Pro Hac Vice* Admission fee for Defendants' lead attorney, costs related to the depositions of Joshua Wintermantel, Wintermantel Enterprises, LLC, Hype Cheer CFO, Anthony Garber, Hype Cheer, LLC, Hypnotic Hats, Ltd., and Hyp's expert, Dr. Melissa Pittaoulis, as well as witness fees incurred in deposing Dr. Pittaoulis. In total, Defendants asked the Court to award them $14,639.03 in costs. (ECF No. 107-2). Hyp objected to all these costs and the Clerk of the Court only awarded Defendants $2,805.00. (ECF No. 111 at 1). Defendants appealed the Clerk's decision. (ECF No. 113).

"Where an unsuccessful litigant appeals the Clerk of the Court's award of costs, the district court reviews the award de novo." *Caravalho v. City of New York*, No. 13-cv-4174, 2018 WL 5312886, at *2 (S.D.N.Y. Oct. 26, 2018) (quoting *Balance Point Divorce Funding, LLC v. Scrantom*, 305 F.R.D. 67, 70 (S.D.N.Y. 2015)) (quoting *Karmel v. City of New York*, No. 00-cv-9063, 2008 WL 216929, at *1 (S.D.N.Y. Jan. 9, 2008)). Taxable costs are enumerated in 28 U.S.C. § 1920. "Local Civil Rule 54.1 further outlines the costs taxable in this district and controls to the extent that it addresses a particular cost." *Ramos v. City of New York*, No. 15-cv-

6085, 2019 WL 3254964, at *2 (S.D.N.Y. July 21, 2019). For the reasons discussed below, the Court affirms in part and revises in part the Clerk's taxation of costs.

### A. Pro Hac Vice Admission

The Clerk granted Defendants' request for the taxation of $200.00 for the *pro hac vice* admission of David Lilenfeld, Defendants' lead counsel. (ECF No. 111 at 3). Hyp objected to this request but did not renew its objection in its Response to Defendants' Motion to Appeal the Clerk's Taxation of Costs. (ECF No. 109 at 4; ECF No. 116). Local Civil Rile 54.1 does not address specifically *pro hac vice* admission costs, which means that it is appropriate to look to costs enumerated in the more expansive § 1920. Section 1920 provides a "clerk of any court . . . may tax as costs . . . (1) Fees of the clerk and marshal." 28 U.S.C. § 1920(1). *Pro hac vice* admission fees are fees of the Clerk of the Court and therefore appropriately taxable. *See GAKM Resources, LLC v. Jaylyn Sales, Inc.*, No. 08-civ-60300, 2009 WL 2150891, at *10 (S.D.N.Y. July 20, 2009) (characterizing costs for *pro hac vice* admissions along with others as "routine costs awarded to prevailing parties in trademark and copyright infringement actions"). The Court affirms the $200 taxation by the Clerk.

### B. Joshua Wintermantel Deposition

Defendants initially requested $ 2,217.35 in total costs related to the depositions of Joshua Wintermantel: $1,557.50 for transcripts, $120.00 for condensed transcripts, $264.00 for minimum transcript fees, and $200.00 for digital transcripts. (ECF No. 108-2). Hyp objected, arguing that condensed and digital transcript costs are not taxable. (ECF No. 109 at 4–5). The Clerk agreed and declined to award Defendants condensed and digital transcript costs as well as minimum transcript fees. In total, the Clerk awarded Defendants $1,557.50, the cost of the transcript only. (ECF No. 111 at 3). Defendants do not dispute the Clerk's decision with respect

9

to transcript costs, but they do argue in their appeal that they were entitled to the minimum transcript fees. (ECF No. 112-1 at 6).

Local Civil Rule 54.1(c)(2) provides that "the original transcript of a deposition, plus one copy, is taxable if the deposition was . . . used by the Court in ruling on a motion for summary judgment." U.S. Dist. Ct. Rules S.D.N.Y.&E.D.N.Y., Civ. Rule 54.1(c)(2); *see Perez v. City of New York*, No. 15-cv-9385, 2019 WL 4400347, at *1 (S.D.N.Y. Aug. 12, 2019). Taxing unnecessary deposition costs beyond what Local Civil Rule 54.1(c)(2) provides would be duplicative and is not permissible. *See Farberware Licensing Co., LLC v. Meyer Marketing Co. Ltd.,* No. 09-cv-2570, 2009 WL 5173787, at * 5; *Yin v. Japan Soc., Inc.*, 99-cv-4806, 2000 WL 827671, at *2 (S.D.N.Y. June 27, 2000); *Internet Law Library, Inc. v. Southridge Capital Management, LLC*, No. 01-cv-660, No. 01-cv-0877, No. 02-cv-0148, 2010 WL 3290965, at *7 (S.D.N.Y. Aug. 11, 2010). Although Defendants concede and the Court agrees that digital and condensed transcript costs fall into this unnecessary and duplicative category, Defendants also argue that minimum transcript fees are somehow exceptional. Defendants, however, provide neither explanation as to what these minimum transcript fees encompass, nor argument as to why they were necessary. (ECF No. 112-1 at 6). Therefore, the Court affirms the Clerk's decision not to tax these fee costs and total award of $1,557.50.

### C. Wintermantel Enterprises, LLC Deposition

Defendants requested $313.50 in total costs related to the deposition of Wintermantel Enterprises, LLC—$283.50 for the transcript and $30.00 for the condensed transcript. (ECF No. 108-3). Hyp objected, arguing that neither of these costs were taxable under Local Civil Rule 54.1(c)(2) because the Defendants did not use the transcript of this deposition in their Motion for Summary Judgment. (ECF No. 109 at 4). Hyp further argued that condensed transcript costs

were never taxable. (*Id.*) The Clerk agreed and awarded Defendants $0. (ECF No. 111 at 3). In their appeal, Defendants counter that they should have been awarded the transcript cost pursuant to Local Civil Rule 54.1(c)(2) because although *they* did not use the Wintermantel Enterprises, LLC deposition in their Motion for Summary Judgment, *Hyp* did, and therefore the deposition transcript was "used" by *the Court* in ruling at summary judgment. (ECF 114 at 2–3; *see* ECF No. 76-3). The Court agrees with Defendants as "the filing of a deposition transcript necessarily means that a Court 'used' a deposition for purposes of the Local Rule." *Internet Law Library, Inc.*, 2010 WL 3290965, at *7. Therefore, Defendants should have been awarded $283.50, the cost of the transcript.

As explained above, Defendants cannot recover for the duplicative cost of the condensed transcript. *See id.*; *Yin*, 2000 WL 827671, at *2.

### D. Anthony Garber & Hype Cheer, LLC Depositions

Defendants initially sought $977.34 in costs related to the depositions of Hype Socks CFO, Anthony Garber: $774.50 for the transcripts, $100 for the digital transcripts, and $60 for the condensed transcripts. (ECF No. 108-4). Defendants also sought $353.00 in costs related to the deposition of Hype Cheer, LLC: $273.00 for the transcript, $50.00 for the digital transcript, and $30 for the condensed transcript. (*Id.*) Plaintiff objected and the Clerk agreed that Defendants could not recover for the costs of digital or condensed transcripts. The Clerk therefore awarded Defendants the costs of only the original transcripts. (ECF No. 111 at 3). As explained above, the Court agrees with the Clerk's assessment and affirms the cost awards of $774.50 for Garber's deposition transcript and $273.00 for the transcript of the deposition of Hype Cheer, LLC.

### E. Hypnotic Hats, Ltd. (Howard Levy) Deposition

Defendants initially sought $1,650.74 in costs related to the deposition of Hyp President Howard Levy. (ECF No. 107). Hyp objected to this request, explaining that Defendants had double-counted this cost. (ECF No. 109 at 2). The statement that Defendants submitted, Hyp pointed out, listed the cost of this deposition as only $752.05. Hyp argued that Defendants had requested to be compensated for the interest that accumulated because the Defendants failed to pay timely their bill to the stenography company producing and charging for the transcript. (ECF No. 109 at 2). Because the Defendants submitted a statement as opposed to an itemized invoice, the Clerk awarded Defendants $0 in costs. (ECF No. 111 at 3). In their Motion for Review of the Clerk's Taxation of Costs, Defendants concede that they accidentally double-counted the cost of the Levy deposition and now request only $752.05. They also submit an invoice, which provides that the cost of the original transcript of Howard Levy's deposition was $752.05 before late fees. (ECF No. 115-1).

Local Rule 54.1(c) permits a party to recover the cost of one copy of a deposition transcript if necessarily obtained. The Rule also requires that bills of costs be accompanied by bills for the claimed costs and "an affidavit that the costs claimed are allowable by law, are correctly stated and were necessarily incurred." U.S. Dist. Ct. Rules S.D.N.Y.&E.D.N.Y., Civ. Rule 54.1(a). Hyp argues that because Defendants failed to submit an adequate bill or truthful affidavit initially, the Court should affirm the Clerk's taxation of this cost at $0. The Court agrees. As the party moving for costs, Defendants bore the "'burden of demonstrating the reasonableness of each charge'…[and their ] failure to provide adequate documentation of costs incurred [should] limit, or even defeat, recovery." *Levy v. Young Adult Inst., Inc.*, No. 13-cv-2861, 2019 WL 1434271, at *5 (S.D.N.Y. March 30, 2019) (quoting *Saucedo v. On the Spot*

12

*Audio Corp.*, No. 16-cv-00451, 2016 WL 8376837, at *20–21 (E.D.N.Y. Dec. 21, 2016) (report and recommendation), *adopted*, No. 16-cv-451, 2017 WL 780799 (E.D.N.Y. Feb. 28, 2017), *vacated on other grounds*, No. 16-cv-451, 2018 WL 4347791 (E.D.N.Y. Jan. 23, 2018); *see Sai Qin Chen v. East Market Restaurant, Inc.*, No. 13-cv-3902, 2018 WL 3970894, at *5 (S.D.N.Y. Aug. 20, 2018). The Court affirms the Clerk's taxation of this cost at $0.

### F. Dr. Melissa Pittaoulis Deposition

Defendants initially sought $ 2,644.10 for the transcript and videotape of the deposition of Plaintiff's expert, Dr. Melissa Pittaoulis. (ECF No. 108-6). Hyp objected to this request, arguing first that a copy of the videotaped deposition was duplicative and therefore not taxable. Hyp also pointed out that Defendants had again failed to itemize the relative costs of each transcript and tape, and instead requested a lump sum amount in costs, preventing Hyp or the Clerk from determining whether Defendants improperly charged Hyp for late fees or interest payments. (ECF No. 109 at 3). The Clerk agreed with Hyp and awarded Defendants $0 in costs for the deposition of Dr. Pittaoulis.

In their Motion for Review of the Clerk's Taxation of Costs, the Defendants submitted an itemized invoice. The invoice stated that Defendants had been billed $1,016.20 for the video and $1,283.00 for the original transcript, for a total cost of $2,299.20. The invoice also provides that the stenography company will charge a 1.5% fee for every month that payment is late. (ECF No. 115-2). Defendants' initial request was for an amount $344.90 higher than the actual costs of the transcripts and videotape. (ECF No. 107-2). Presumably, this was the cost of the interest Defendants owed due to delayed payment.

Because Defendants again provided inadequate documentation, the Court again affirms the Clerk's taxation of this cost at $0.

### G. Dr. Melissa Pittaoulis Witness Fees

Defendants initially requested $ 6,283.50 in witness fees incurred from deposing Plaintiff's expert, Dr. Melissa Pittaoulis. Hyp objected to this request, arguing that Defendants improperly sought to be reimbursed for an invoice that Hyp paid after Defendants failed to do so for several months. (ECF No. 109 at 1–2). The Clerk agreed and awarded Defendants $0. (ECF No. 111 at 3).

In its Motion for Review of the Clerk's Taxation of Costs, Defendants concede that they never paid the witness fees for Dr. Pittaoulis but argue that these fees are taxable nonetheless because they were still *incurred by* Defendants and bills of cost are not limited to costs actually *paid*. (ECF No. 114 at 8; ECF No. 117 at 2). In their opening brief, Defendants state that they would consent to these fees not being taxed if Hyp would state that it will not seek repayment for the invoice it paid, or alternatively, if the Court would require Plaintiff not to seek repayment of those costs. (ECF No. 114 at 8).

All that is before the Court today is the question of whether Defendants can tax costs it owes but has not paid, and which in fact have been paid by the opposing party from whom Defendants are seeking to collect. Because allowing such a practice would allow Defendants to gain an unfair windfall, the Court affirms the decision of the Clerk of Court not to tax the cost of Dr. Pittaoulis's witness fees to Hyp.

## III. Conclusion

Defendants' Motion for Attorney's Fees is DENIED. The Clerk's Taxation of Costs is AFFIRMED in part and REVERSED in part. Defendants are awarded $3,088.50 is costs.

**SO ORDERED.**

Dated: March 26, 2020
New York, New York

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**